IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DISH Network, L.L.C., a Colorado Limited DISH Network L.L.C., a Colorado Limited Liability Company, ECHOSTAR TECHNOLOGIES L.L.C., a Texas limited Liability Company, and NAGRASTAR L.L.C., a Colorado Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> Ashley García Alejandri, a/k/a Ashley Garcia Alejandrino, a/k/a Ashley Garcia, d/b/a Coki One Tech & Electronics, d/b/a www.cokione.com and Joel Cotto Soto, a/k/a Joel Coto, d/b/a FTA del Sur, d/b/a www.ftadelsur.com, d/b/a ALFA Technology Store and d/b/a ALFA Network and John and Jane Does 1-10, <br><br> Defendants. | CIVIL NO. 10-2064 (CVR) |

## OPINION AND ORDER

### INTRODUCTION

Plaintiffs Dish Network, L.L.C., Echostar Technologies L.L.C., and Nagrastar L.L.C. (referred hereafter collectively as "plaintiffs") filed a complaint against defendant Ashley García Alejandri, a/k/a Ashley García Alejandrino, a/k/a Ashley García, d/b/a Coki One Tech & Electronics, d/b/a www.cokione.com (referred hereafter as defendant "García Alejandri") in relation to the sale and distribution of equipment to enable unauthorized use of plaintiff Dish Network's satellite television signals, as well as defendant's own use of unauthorized interception of plaintiffs' signals in their store to demonstrate to their customers their piracy capabilities. The Complaint against defendant raises causes of action

for the following:  trafficking in pirate devices in violation of the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(2); facilitating the unauthorized reception of satellite signals in violation of the Communications Act of 1934, 47 U.S.C. §605(a), as amended; modification and sale of pirate devices under previous statute at §605(e)(4); circumvention of Copyright Protection System, 17 U.S.C. §1201(a)(1)(A); and unauthorized interception of electronic communication a violation of 18 U.S.C. §2511(1).  (Docket No. 2).

Plaintiffs filed a Motion for Summary Judgment, with the corresponding memorandum of law and supporting statements, including Exhibit A, the deposition testimony of defendant Ashley García Alejandri, and Exhibits  B-E, statements of Kevin Gedeon, Jerry Lee Gee, Edwin Hernández and John McLaughlin.  (Docket No. 77). Defendant García  Alejandri submitted a Motion in Opposition to Summary Judgment, without any supporting documentation and/or reference to plaintiffs' uncontested facts or a submission of defendant's own statement of uncontested facts.  Said opposition was mostly based on counsel's statements in regards to the legality of the devices at issue from the claim made by counsel these are also available for sale from other sources, including internet sites.  (Docket No. 89).[1]

Plaintiffs then filed a reply brief to defendant García Alejandri's Opposition addressing defendant's failure to comply with the Federal Rules of Civil Procedure, as well

---

[1]  The remaining defendant has not presented an opposition to plaintiffs' request for summary adjudication since all claims against co-defendant Joel Cotto Soto a/k/a Joel Coto, d/b/a FTA del Sur, d/b/a www.ftadelsur.com, d/b/a ALFA Technology Store and d/b/a ALFA Network were already dismissed with prejudice. (Docket No. 70).  Partial Judgment as to said defendant was already entered.  (Docket No. 75).

as with applicable local rules, when filing his opposition to the motion for summary judgment and requesting plaintiffs' uncontested facts be admitted. (Docket No. 90-1).

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[2]

Pursuant to the language of the applicable rule, as amended in 2010, the moving party bears the two-fold burden of showing that there is "no genuinely disputed" factual predicate. Said party may also show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-

---

[2]   On April 28, 2010, the Supreme Court of the United States approved amendments to Federal Rule of Civil Procedure 56, effective December 1, 2010.   The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases. *See* Ophthalmic Surgeons, Ltd. v. Paychecx, Inc., 632 F.3d 31 (1st Cir. 2011).

finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during consideration of a motion for summary judgment, Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

The moving party's uncontested facts and other evidentiary facts of record on an uncontested motion for summary judgment must still show that said party would be entitled to summary judgment. *See* Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003). As such, when a motion for summary judgment remains unopposed, the district court may grant summary judgment, if appropriate, for failure to oppose does not mean the summary judgment requested will be automatically granted. Said request for summary judgment even if unopposed must be scrutinized in accordance with rule governing such motions. *See* Pérez-Cordero v. Wal-Mart Puerto Rico, 440 F.3d 531 (1st Cir. 2006).

Dish Network, L.L.C., et al. v. Ashley García Alejandri, et al
Civil No. 10-2064 (CVR)
Opinion and Order
Page No. 5

## UNCONTESTED ISSUES OF FACTS

Defendant García Alejandri in his opposition did not address plaintiffs' uncontested facts nor did he submit his own uncontested facts. Still more, defendant García Alejandri did not comply with Local Rule insofar as providing a separate statement of facts nor any reference to specific citation to the record. The Local Rules require that:

(c) Opposing Statement of Material Facts.

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing party shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule. Local Rule 56(c).

(e) Statement of Facts Deemed Admitted Unless Proper Controverted; Specific Record of Citation Required.

Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts. Local Rule 56(e).

The application of a local rule which requires a timely opposition --or when no significant opposition at all to a motion is submitted-- is reviewed for abuse of discretion. The Court of Appeals for the First Circuit has given a special degree of deference to a court's

interpretation of its own rules. Cabán Hernández v. Phillip Morris USA, Inc., 486 F.3d 1,

17 (1st Cir.  2007); see Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005);

Vélez v. Awning Windows, Inc., 375 F.3d 35, 41-42 (1st Cir. 2004); United Parcel Serv., Inc.

v. Flores-Galarza, 318 F.3d 323, 330 & n. 10 (1st  Cir. 2003); Corrada Betances v. Sea-Land

Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32,

33-34 (1st  Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000).

Upon lack of any controverted facts as presented by plaintiffs to resolve the issues

raised in the motion for summary judgment, the facts below are considered uncontested.

It is uncontested that plaintiff Dish Network operates a satellite distribution system

with legitimate hardware and encryption technology components of above other plaintiffs

having the distribution rights for copyrighted programming from content providers.  These

encrypted signals are then delivered through satellite to legitimate subscribers who have

paid for the right to view said signals.   These signals are interstate satellite signals

predominantly containing work that is protected by copyright and not intended for the

general public.  Plaintiff uses smart cards for its decryption system. Pirates to this system

have been able to create a work around, that is referred as a card-hack of certain former

encryption system named Nagra 2 used by plaintiff up to June 2009.  Through this card-

hack pirates have created various devices and technologies to allow individuals to decrypt

the Dish Network's signals without authorization.  The pirates' created software, modified

Nagra 2 card hack piracy software, to allow card-hack technology to be programmed onto

Free To Air (referred hereafter as "FTA") satellite receivers which receivers were originally

designed to receive signals that were not encrypted.  Once these FTA receivers are

programmed with the card-hack software, it may decrypt Dish Network's signals without authorization.  (Docket No. 77, plaintiff's Exhibit C, statement Mr. Jerry Lee Gee, ¶¶ 5, 25, 34-36 and 73).

In June of 2009, plaintiff switched to a new encryption system, referred by pirates as Nagra 3, which does not appear to have been reverse engineered and thus after June 2009 the card-hack piracy seemed to come to an end.  (*Id.*, ¶37).

In 2007, pirates developed a new method to obtain Dish Network's signals without authorization, the Internet Key Sharing (referred hereafter as "IKS"), which is not based upon the card-hack, but uses internet-enabled FTA receivers which are capable of connecting to the internet.  (*Id.*, ¶50).  Once the piracy software, Modified FTA/IKS piracy software, is loaded to internet-enabled FTA receivers, the internet connection permits the sharing of control words through IKS.  FTA receiver contacts a specific computer server over the internet, IKS Server, which provides the control words necessary to descramble various channels of Dish Network's programming.  The control words are received by the internet-enabled FTA receivers used by end-users to descramble Dish Network's programming without authorization or payment to Dish Network.  (*Id.*, ¶53).

Through defendant García Alejandri's admissions, both in his deposition testimony and the answers to plaintiff's request for admissions, it has been established as uncontested that defendant García Alejandri operates a retail store business located at 435A Andalucía Avenue, Puerto Nuevo, Puerto Rico and has used the name Coki One Tech & Electronics. Said defendant admits to have sold satellite receivers and satellite hardware at the store and through its website www.cokione.com.  (Docket No. 77, plaintiff's Exhibit A).

Installers offering services to purchasers at García Alejandri's stores of satellite receivers and satellite hardware were made available at said store, identified as Coki One, for some left their calling cards for prospective clients. Defendant admitted to have sold satellite receivers knowing that most FTA receivers and, essentially, all the internet-enabled receivers, would be ultimately used for Dish Network piracy. (Docket No. 77, plaintiff's Exhibit A; Exhibit D, Edwin Hernández' statement ¶¶ 26, 34).

On October 21, 2008, an undercover investigator for plaintiff, Edwin L. Hernández (referred hereafter as "Hernández"), visited defendant's Coki One store an engaged in conversation with defendant García Alejandri who stated words to the effect that it was illegal to program the FTA traditional receivers to obtain Dish Network's programming so they would not do so at the site but had a technician who could program the receiver off-site for Hernández. (Docket No. 77, plaintiff's Exhibit D, ¶¶16-17). The following day Hernández visited again the store Coki One and García Alejandri stated that he could get him an FTA receiver and programming, but the programming had to be done outside of the store. García Alejandri provided the names of several technicians to Hernández who could program the receiver, including one Elías Rivera (referred hereafter as "Rivera"). While still at the store, Hernández contacted Rivera and was told that he could program the receiver, to buy same, and wait for him at the Coki One store. Hernández bought the Captiveworks CW800 traditional FTA satellite receiver for $126.26 from defendant García Alejandri. (*Id.*, ¶¶21-26). Rivera arrived to the Coki One store and made arrangements with Hernández to

Dish Network, L.L.C., et al. v. Ashley García Alejandri, et al
Civil No. 10-2064 (CVR)
Opinion and Order
Page No. 9

meet at another location where Hernández would pick up the programmed receiver.[3]  The

next day both Hernández and Rivera met and the latter was paid $30 for the programming.

An examination of the receiver retrieved from Rivera showed it had been modified with

particular Nagra 2 card hack piracy software, which could receive, without authorization,

Dish Network's programming through June of 2009.  (Docket No. 77, plaintiff's Exhibits

D, ¶¶27-30; Exhibit C, Gee's statement ¶70).

On July 14, 2010, Hernández went again to the Coki One store and was

recommended by defendant García Alejandri to purchase an internet-enabled FTA receiver,

the Nfusion Phoenix FTA satellite receiver.  Hernández asked about the programming to

enable the receiver to obtain Dish Network's signal and was recommended three

technicians, as to whom defendant provided their business cards, among them one Aníbal

Hernández, and was informed he was the one closer who should be used for the quickest

programming.  (Docket No. 77, plaintiff's Exhibit D, ¶¶33-37).  Hernández arranged for

Aníbal Hernández to come to the store and followed him to a residential address where he

observed the receiver being then attached to a computer to be programmed.[4]  Hernández

paid Aníbal Hernández $40.00 for the programming services.  An examination thereafter

determined the internet-enabled FTA receiver had been modified with particular FTA/IKS

piracy software files used to create an unauthorized Dish Network's decryption device that

---

[3]  Plaintiff's investigator Kevin Gedeon participated together with Hernández in following Rivera to a residential
address. (Docket No. 77, plaintiff's Exhibit B).

[4]  Once more, Mr. Gedeon, plaintiff's investigator, followed Hernández to the residence.  Although the
uncontested facts refer this time to García also following, it seems to be a typo as to the name for the accompanying
statement refers instead to Hernández, not to García as the participant who followed together with Gedeon to Hernández'
residence.

Dish Network, L.L.C., et al. v. Ashley García Alejandri, et al
Civil No. 10-2064 (CVR)
Opinion and Order
Page No. 10

would use the IKS technology which is still a viable form of Dish Network's piracy.  (Docket No. 77, plaintiff's Exhibit D, ¶¶37, 41-43; Exhibit C, ¶73).

On the basis of García Alejandri's two above described transactions in the selling and distribution of Dish Network's piracy devices, which were done willfully and for financial gain or commercial advantage, plaintiffs' estimate as to financial loss based on their investigation and litigation is of approximately $294.93 per month in subscription and pay per view for each piracy device in use, with an annual loss of $3,539.20 as to each device. (Docket No. 77, plaintiff's Exhibit C, ¶77).

As to these uncontested facts presented by plaintiffs, defendant García Alejandri submitted his opposition which, based on his counsel's averments, without more, refers to the selling of these FTA receivers as not being illegal *per se* for these were designed to receive Free-To-Air satellite television signals and are available through numerous other stores in Puerto Rico and through web sites.  Counsel for defendant further argues in the opposition that García Alejandri denies having ever oriented any of the former clients as to ways to pirate Dish Network's signals.  Clearly, these averments by counsel are insufficient to defeat plaintiffs' uncontested facts, regardless of also not being in compliance with the relevant rules.

## LEGAL ANALYSIS

### A.    Communication Act's Violations.

Section 605(a) of the Communication Act provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication **by wire or radio** and use such communication (or any information therein contained) for

his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605 (a). (Emphasis supplied).

In Charter Communications Entertainment I, DST v. Burdulis, 460 F.3d 168 (1st Cir. 2006), the Court of Appeals for the First Circuit resolved the controversy among the district courts sitting in the First Circuit, concluding that section 605 (a) was intended to apply only to the interception of radio and does not apply to the theft of cable services. Charter, 460 F.3d at 173. As such, the reference to Section 605 (a) in the Complaint does not apply to the situation in the case at bar where it is uncontested that the acts alleged by plaintiffs as committed by defendant relate to satellite signals transmitted over a cable network, for which it may not prevail in its claim under section 605 (a).[5]

Therefore, plaintiff Dish Network is not entitled to summary judgment in regards to its claims under Section 605(a).[6]

---

[5]   To this effect, Charter clarifies that "regarding the statutory text itself, the district court correctly points out that § 605 is noteworthy for its general exclusion of communications by wire or cable... § 605 does make reference to communications by wire or cable in a few, very limited instances. The vast majority of § 605 is devoted to communications by radio. Moreover, Congress clearly understood the difference between 'communication by radio' and 'communication by wire,' as it defined separately the two methods of communication. *See, e.g.,* 47 U.S.C. § 153(33) (defining 'communication by radio'); *id.* § 153(52) (defining 'communication by wire'). We presume that had Congress meant for 'communication by wire' to be a pivotal part of the § 605 regulatory regime, it would have stated as much. '[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal quotation marks and citations omitted). The fact that § 605 deals almost exclusively with 'communication by radio' speaks volumes, and we think there was no need for Congress to make specific reference to its general desire to exclude 'communication[s] by wire' from the § 605 regulatory framework." Charter, 460 F.3d at 172-73.

[6]   *See* Eric C. Surette, J.D., *Applicability of 47 U.S.C.A. § 605, Prohibiting Unauthorized Interception of Radio Communications, To Sale and Use of Cable Decoding Equipment,* 195 A.L.R. Fed. 565 (2004). Section 605 of Title 47 of the United States Code prohibits the unauthorized interception of radio communications. The question has arisen whether this provision is applicable to the sale and use of cable decoding equipment. Courts held that the use of an unauthorized cable television descrambler did not violate § 605 for it is reasoned that once a satellite transmission reaches a cable system's wire distribution network, the only applicable statute is § 553, so the two statutes are mutually exclusive.

However, plaintiff Dish Network has also raised defendant has violated Section 605(e)(4) of the Communication Act which proscribes the sale and/or distribution of satellite piracy devices, which provides:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

This provision has been considered to extend civil standing such that a person aggrieved under the first part of the definition would also have standing to bring a claim based on the second part of the definition. That is, merely by virtue of having proprietary rights in a specific intercepted communication, under § 605(a), a plaintiff would also have standing to sue any person who manufactured, exported, modified, or decrypted equipment in violation of Section 605 (e)(4) that was designed and used to unlawfully decrypt the plaintiff's communications.[7] The House Report accompanying the 1988 amendment states explicitly that the amendment was intended to deter piracy practices by "expanding standing to sue ...." Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 912 (6th Cir. 2001) (citing H.R.Rep. No. 100–877(II), at 28, *reprinted in* 1988 U.S.C.C.A.N. 5638, 5657);

---

[7] *See* DIRECTV Inc., v. Budden, 420 F.3d 521 (5th Cir. 2005) (section of Federal Communications Act defining "person aggrieved" for purposes of standing to bring a civil claim for piracy of satellite cable programming does not limit the definition only to those expressly identified, *i.e*, distributors of satellite cable programming and providers of equipment necessary to receive satellite cable programming; rather, plain language of statute, in particular the phrase "shall include" does not limit broad scope of piracy statute).

DirecTV, Inc. v. Tasche, 316 F.Supp.2d 783 (E.D.Wis. 2004).[8]       Under the undisputed

facts presented by plaintiffs, it has been established that defendant García Alejandri

violated Section 605 (e)(4) as claimed by plaintiffs with its sale and distribution of modified

(programmed) receivers which were primarily used in the unauthorized decryption of

plaintiff Dish Networks' signal in 2008 and  2010. Thus, plaintiffs' request for summary

judgment in regards with its claim under §605(e)(4) is GRANTED.

**B.  Digital Millennium Copyright Act's Violations.**

       Plaintiffs also claim that García Alejandri's sale and distribution of FTA receivers and

internet-enabled FTA receivers, with the arrangements made of programming of these

receivers with piracy software, violates the Digital Millennium Copyright Act, 17 U.S.C.

§1201(a)(1)(A).  In its relevant provision it states:

> (2) No person shall manufacture, import, offer to the public, provide, or
> otherwise traffic in any technology, product, service, device, component, or
> part thereof, that--
>
> (A) is primarily designed or produced for the purpose of circumventing a
> technological measure that effectively controls access to a work protected
> under this title;
>
> (B) has only limited commercially significant purpose or use other than to
> circumvent a technological measure that effectively controls access to a work
> protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person

---

[8] Charter, 460 F.3d at 174 n. 9 (distinguishing from direct-to-home satellite services, which sends programming directly to consumers rather than to cable operators who retransmit it to their subscribers).  The issue in Charter dealt with Section 605(a) and its application to communication by radio.

with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title. 17 U.S.C. §1201(a)(2).

Dish Network's signals primarily contain works which are protected under copyright laws. Plaintiffs' uncontested facts have established the modified receivers sold and arranged by defendant García Alejandri were primarily to circumvent Dish Network's encryption and the sale of said devices by defendant was done knowing these would be used for such purpose, that is, to descramble/decrypt the cable and/or satellite television of plaintiffs.

To establish liability under the Digital Millennium Copyright Act,[9] a plaintiff must establish two elements: (1) defendant trafficked in a technology; and (2) the technology was primarily designed or produced to circumvent conditional access controls to protected works, or has limited commercially significant use other than such circumvention. Thus, a cable television service, such as Dish Network, has standing to bring action against sellers of above described  FTA modified receivers, programming and software for the FTA/IKS piracy software in violation of Cable Communications Policy Act and Digital Millennium Copyright Act.

---

[9]  The Digital Millennium Copyright Act (Pub. L. No. 105–304, 112 Stat. 2860 (1998)) was enacted in 1998, to adapt copyright law to the digital age. Two major provisions of the Act limited the liability for Internet service providers of copyright infringement in certain instances and created an exception to liability for making a copy of a computer program for computer maintenance and repair. Courts have begun to apply the Digital Millennium Copyright Act to actions for copyright infringement. Amy P. Bunk, J.D., *Validity, Construction, and Application of Digital Millennium Copyright Act (Pub. L. No. 105–304, 112 Stat. 2860 (1998))*, 179 ALR Fed 319.

<u>Dish Network, L.L.C., et al. v. Ashley García Alejandri, et al</u>
Civil No. 10-2064 (CVR)
Opinion and Order
Page No. 15

Additionally, the Supreme Court has expressly instructed that courts apply the Copyright Act to new technologies. In <u>Sony Corp. of America v. Universal City Studios, Inc.</u>, 464 U.S. 417, 104 S.Ct. 774 (1984), the Court instructed that courts must "[a]pply[ ] the copyright statute, as it now reads, to the facts as they have been developed" even though Congress might ultimately "take a fresh look at this new technology, just as it so often has examined other innovations in the past." *Id.* at 456, 104 S.Ct. 774. The Supreme Court has made clear that it is particularly important for courts to take this tack when faced with novel Copyright Act issues. "[F]rom its beginning, the law of copyright has developed in response to significant changes in technology," and as "new developments have occurred in this country, it has been the Congress that has fashioned the new rules that new technology made necessary." *Id.* at 430–31, 104 S.Ct. 774. *See* <u>Sony BMG Music Entertainment v. Tenenbaum</u>, 660 F.3d 487, 501 (1st Cir. 2011).

Liability for theft of cable service is not limited to situations where cable services have actually been intercepted and liability exists where a plaintiff proves that a defendant intended to assist in the unauthorized reception of cable services.

As to this action, it has also been established defendant García Alejandri as a seller knew the devices sold would be used to bypass cable service's encrypted and copyrighted programs and avoid the billing mechanism and authorized subscriptions of customers, for which plaintiffs' service was or would be injured from loss of remuneration attributable to its otherwise authorized subscribers. <u>CoxCom, Inc. v. Chaffee</u>, 536 F.3d 101 (1st Cir. 2008).

Thus, based on the above summarized uncontested issues of fact, plaintiffs' request for summary judgment as to defendant's violation of the Digital Millennium Copyright Act is GRANTED.


**C.  Statutory Damages.**

Insofar as the Communication Act, its relevant portions provides statutory damages as follows:

> (3)(A) Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction. 47 U.S.C. § 605(e)(3)(A).
>
> > ....
> >
> > (ii) may award damages as described in subparagraph (C); and
> > (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(ii) and (iii).
>
> > ....
>
> (C)(I) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;47 U.S.C. § 605(e)(3)(C)(i).
> > ....
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.  47 U.S.C. §605(e)(3)(C)(i)(II).

Plaintiffs have presented uncontested facts as to defendant having violated the Communication Act as to the sale of at least two devices, the modified FTA device in 2008 and the internet-enabled FTA receiver in 2010, for which it is requesting the minimum statutory damage as to each device sold and/or distributed by defendant in violation of Section 605(e)(4) which is $10,000.00, as stated in 47 U.S.C. §605(e)(3)(C)(i)(II).  Thus, plaintiff seeks in its summary judgment motion and is entitled to $20,000.00 in statutory damages for the two devices.

## D.  Costs and Fees.

Plaintiffs also seek an award of the investigatory costs and attorney's fees associated with this matter, which it is provided by 17 U.S.C. §1203 and/or 47 U.S.C. §605(e)(3)(B)(iii). Plaintiffs aver said award is mandatory pursuant to §605(e)(3)(B)(iii).

Under § 605(e)(3)(B)(iii), an award of attorneys' fees is mandatory for any violations of § 605(a). *See* Charter, 460 F.3d at 171 n.2.  In this content, this Magistrate Judge ruled above that plaintiffs established a violation of Section 605(e)(4) of the Communication Act.[10] As such, plaintiffs are entitled to costs and attorney's fees.  However, this Court will hold in abeyance the amount of attorney's fees and costs that may be awarded as to the violations summarily established.  Thus, the request for cost and attorney's fees to be imposed upon defendant is held in abeyance until plaintiffs submit a reasonable itemized

---

[10]  There is a difference between the wording of  § 553(c) and § 605(e) for the award of attorneys' fees. Section 553 provides that the court "*may* ... direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C) (emphasis added). Although § 605, as amended by the 1984 Act, contained an identical provision, Congress further amended § 605 in 1988 to provide that the court " *shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Pub.L. No. 100-667, § 205(8), 102 Stat. 3935, 3959 (1988) (codified at 47 U.S.C. § 605(e)(3)(B)(iii)) (emphasis added).

claim for costs and fees so the Court may determine the reasonable amounts that will be awarded.

**E.  Retention of Items Seized.**

Plaintiffs further seek to be allowed full possession and seizure of all items seized from defendant by a civil seizure order executed by the U.S. Marshal.  (Docket No. 21). Plaintiffs aver under Section 1203(b)(2) the Court may order the impounding of any device or product it has reason to believe was involved in a violation of the Digital Millennium Copyright Act's anti-circumvention provisions.  Plaintiffs refer their expert has stated the items seized were involved in defendant García Alejandri's piracy activities.  (Docket No. 77, plaintiff's Exhibit B, Kevin Gedeon's statement ¶47).

A review of the return by the U.S. Marshal as it appears in the court's record at Docket No. 21 and Mr. Gedeon's statement that the items showed in the inventory list seized from defendant's store were involved in piracy activities remain uncontested by defendant's limited opposition.  Still, plaintiffs at all times have also submitted, through their own experts, the inventory of articles and devices seized pursuant to the warrant not only was similar to those involved in defendant's piracy activities but had only limited commercially significant purpose other than to circumvent Dish Network's encryption and conditional access technology. (Exhibit B, Gedeon's statement ¶33 a-b; Exhibit Gee's statement C, ¶75 a-b).

Thus, said devices will be disposed by the U.S. Marshals' Service upon order from the Court at the conclusion of these proceedings.

## F.  Permanent Injunction.

Plaintiffs requested a permanent injunction against defendant García Alejandri be issued barring defendant from selling or distributing Dish Network piracy devices, specifically from selling FTA receivers and internet-enabled FTA receivers while also taking action to effectuate his purchasers obtaining Dish Network piracy software for the receivers. Since the action requested from defendant basically is an order to follow and obey federal policy law, the requirements usually to be met for a permanent injunction to be obtained were omitted from discussion in plaintiffs' memorandum.  These requirements entail a showing that plaintiff: (1) has suffered irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) consideration of the balance of hardships between plaintiff and defendant, indicates a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. Ebay Inc. v. MercExchange, LLC, 547 U.S. 388, 391, 126 S.Ct. 1837 (2006); CoxCom Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008).

Plaintiffs have herein established the probability of success on the merits criteria for it is uncontested in summary judgment the devices at issue are designed or produced for circumventing a measure that controls access to a copyrighted work; (2) the devices have limited commercial purpose or use other than circumventing an access control measure; or (3) the devices are marketed for use in circumventing an access control measure. Likewise, plaintiff has shown the economic damage it has suffered and will continue to

suffer, upon unlawful use by non-subscribers of their services.  Clearly public interest has been found for the public has an interest in compliance and enforcement of federal law. *See* Coxcom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008).

Additionally, defendant's opposition submits there is no contention that a permanent injunction be issued in the sense that defendant García Alejandri is not to sell any Dish Network for any illegal use, specially piracy of their programs and/or services. (Docket No. 89, pp. 1-2). Thus, the balance of hardships that defendant may suffer, upon absence of opposition from defendant that it may suffer irreparable injury if the injunction is granted, warrants same be granted as requested by plaintiffs.  As such, permanent injunction is GRANTED as requested.

### CONCLUSION

In view of the foregoing, plaintiffs' Motion for Summary Judgment (Docket No. 77) is GRANTED IN PART AND DENIED IN PART as follows:

The request for summary judgment as to violation of Section 605(e)(4) of the Communication Act, violation of the Digital Millennium Copyright Act, entitlement to statutory damages, and issuing of a permanent injunction is GRANTED.

The request for summary judgment as to the plaintiffs' request for costs and fees, is held in abeyance and shall be determined once plaintiffs submit and itemize the same.

Dish Network, L.L.C., et al. v. Ashley García Alejandri, et al
Civil No. 10-2064 (CVR)
Opinion and Order
Page No. 21

The requests for summary judgment as to a violation of Section 605(a) and for

plaintiffs  to retain items seized pursuant to civil seizure warrant are DENIED.[11]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 30th day of July of 2012.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE

---

[11]   Having established these items lack commercial purpose but for the piracy of the satellite television signal, the U.S. Marshal will be ordered, on due course, to arrange for the proper disposition of these devices.